[Civ. No. 29413.   Second Dist., Div. Four.   Mar. 3, 1967.]

JUANITA VESTESEN et al., Plaintiffs and Appellants, v. MAIER BREWING COMPANY, Defendant and Respondent.

Magana, Olney, Levy & Cathcart, Mitchell Levy, Jerome W. Shepard and Ellis J. Horvitz for Plaintiffs and Appellants.

Moss, Lyon & Dunn, Gerold C. Dunn and Henry F. Walker, for Defendant and Respondent.

KINGSLEY, J. — On February 27, 1961, an accident occurred resulting in the death of Louis J. Vestesen, and injury to Vasser J. Allen, who at that time were engaged in the course of their employment for Halbert Brothers, Inc. Actions were brought against defendant Maier Brewing Company for damages for wrongful death of Vestesen and damages for personal injury to Allen. Enterprise Insurance Company, as Halbert's workmen's compensation carrier, intervened in both actions; the actions were consolidated for trial. Following a trial on the merits, general verdicts were returned in favor of defendants, and against Vestesen, Allen and the intervener. Motions for new trial were denied. Only Vestesen and Allen appeal, and Allen has adopted Vestesen's brief.

### FACTS

Vestesen and Allen were two members of a four-man crew, which also included foreman Toberman and operator Idol; all four men were employees of Halbert Brothers. Halbert Brothers were engaged by defendant Maier to raise two steel tanks from the yard to the roof of a taller building where they were to be lowered through the roof. As part of that operation, the crew was engaged in lifting two "A" frames, weighing about 150 pounds, by means of a cable attached to a winch and boom owned by Maier and permanently attached to the roof of the building. The shaft of the winch broke, causing the cable to unwind and the load to fall on Allen and Vestesen, resulting in the injuries herein complained of.

The theory of plaintiffs' claim against Maier is that the winch was defective, that Maier failed adequately to warn plaintiffs, or their employer, of that defect, and that, for that reason, Maier was liable to plaintiffs, either under the theory that Maier was a statutory "employer" who had failed to comply with applicable safety orders, or under the theory that Maier, as the owner of the premises, had not warned plaintiffs (its invitees) of the danger.

I

In determining the validity of plaintiffs' contentions that the above theories were not properly presented to the jury, we must bear in mind that, unlike the usual case in this area of law, it is not contended that the "premises," in the sense of the physical locale of the work to be done, were unsafe, but rather that a particular piece of equipment, namely the winch and its boom, were unsafe by reason of a defect in the winch itself.

We think that it is clear that Halbert and Halbert's employees, including Vestesen and Allen, were aware of the ordinary risks involved in working in an area below a load being lifted by even safe equipment, and that they did not need warning of, and that Maier was under no duty to warn of, such obvious and normal dangers. The problem arises out of the claim that the defect in the winch created additional and unusual risks to workmen on the ground, that Maier had a duty to protect them against such unappreciated risks, and that Maier had not fulfilled that duty.

Under the evidence, the jury might have found for the defendant on the ground that the defect in the winch was not the proximate cause of the accident but that the accident was caused by the negligence of Idol, Halbert's employee, in operating the winch. However, the opposite conclusion was also permissible under the evidence and plaintiffs were entitled to have the jury properly instructed on their rights if they found that it was the winch, and not Idol, that caused the accident.

We think it clear, also, that, whatever the nature and effect of the discussions between Halbert and Maier's vice-president, Wallerstein, neither of them had in mind the defect on which plaintiffs now rely. As we read the rather confused and sketchy testimony concerning that discussion, the parties were concerned over the *capacity* of the winch and boom to raise heavy loads, a concern directed in part to the manner in

which the winch was anchored to the building. In that context, it is undisputed that Wallerstein told Halbert that he did not think the winch and boom capable of lifting the heavy tanks, and that Halbert replied that he did not intend to use the equipment for that purpose but only for the purpose of lifting the "A" frames and similar light equipment. The record leaves in doubt the question of whether Wallerstein's warning against, and prohibition of, the use of the winch and boom was limited to its use to raise the tanks (as Halbert testified he understood it) or whether it was a warning against, and a prohibition of, the use of the winch and boom for any purpose.

Although, as we have said, the discussion was directed to the question of the capacity of the equipment, there was evidence from which it might be inferred that the defect in the winch, now relied on, was one of which Maier and its employees should have been aware. If the jury drew that inference, then it is admitted that, if the winch and boom were furnished by Maier to Halbert for use in the work to be done, Maier was, insofar as the use of the winch and boom were concerned, a statutory employer under the Labor Code and liable for any breach of the applicable safety orders. Again, if the jury drew the inference that Maier was chargeable with knowledge of the defect in the winch, we think that it is also true that, even though Maier had not furnished the winch and boom, in the sense of tendering them to Halbert for use, Maier, as a property owner, was liable to the plaintiffs unless it had taken adequate precautions either to warn them against a use which it could foresee might be made, or to take steps to prevent such a potential use.

As we read the various cases cited to us, Maier's liability as a statutory employer involves a finding that it had given either express or implied permission for the use of the winch and boom. If it had given that permission, it had "furnished" them; if it had not given permission, it had not "furnished" in the sense of the Labor Code. The trial court instructed as follows:

"If you should find from all the evidence that Halbert Bros. and its employees used the winch machinery on the roof without permission, express or implied, of Maier Brewing Company, then you are instructed that no plaintiff may recover herein and your verdict must be for the defendant."

If this instruction had been limited to the issue of Maier's

liability as a statutory employer, it would have been proper as far as it went. It could well have gone further and related, expressly, the matter of "permission" to the statutory term "furnish," but plaintiffs made no request for that amplification and the instruction as given, coupled with other instructions on sundry Labor Code provisions, including the definition of the term "employer," were sufficient, in the absence of a specific request for greater amplification, to present the statutory employer issue to the jury.

■ However, the quoted instruction was not limited to the issue of Maier's liability as a statutory employer; as given it applied also to any liability of Maier, on any theory. Plaintiffs also requested the trial court to give BAJI No. 213-G;[1] the trial court refused. We think this was error. As distinguished from liability as a statutory employer, a landowner has a general duty toward workmen invited onto its property, to take precautions to protect them against defects in "equipment and facilities as are under the owner's or occupant's control, and which the workman is *likely* to use." Thus, it is not enough that the property owner fails to furnish the defective equipment, he must take affirmative steps to render its use unlikely, or he must see that the workman is warned of the peril inherent in its use. As far as we can find, this alternative theory of liability was never explained to the jury. In fact, the instruction given, and quoted above, withdrew it from their consideration, since it told them that Maier was liable only if it had given permission of some sort for the use of the winch. But the jury could have concluded, from the evidence, exercising its power to accept part but not all of the testimony of a particular witness, that Wallerstein, although being chargeable with knowledge that the winch might be used, had neither authorized nor forbidden its use.

Since the judgment must be reversed for the reason above set forth, we need not discuss the other alleged errors urged

---

[1] "When an owner or occupant of premises expressly or impliedly invites a workman to enter the premises for the purpose of performing thereon some service from which both parties expect a benefit, the owner or occupant, to the end of protecting the workman, is required to use reasonable care to provide him with a reasonably safe place in which to work and in seeing that such equipment and facilities as are under the owner's or occupant's control, and which the workman is likely to use, are reasonably safe for use in carrying out the purpose of his employment.

"It is also the duty of the owner or occupant in such circumstances to warn the workman of any danger which is not obvious and which is known to the owner or occupant or would be known to him in the exercise of ordinary care."

on us by plaintiffs. They involve matters which are not likely to recur on a retrial, in which the evidence and instructions are directed to the fundamental issues above outlined.

The judgment is reversed.

Files, P. J., and Jefferson, J., concurred.

A petition for a rehearing was denied March 21, 1967, and respondent's petition for a hearing by the Supreme Court was denied April 26, 1967.